IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-00229-01-CR-W-ODS |
| ) | |
| DAMON GOODRICH, ) | |
| ) | |
| Defendant. ) | |

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS

On August 31, 2011, the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri, issued her Report and Recommendation recommending that Defendant's Motion to Suppress be granted in part and denied in part. The Government did not file objections to the Report and Recommendation, and the time for doing so has passed. 28 U.S.C. § 636(b)(1)(C); Local Rule 74.1(a)(2). Defendant filed objections.

The Court has reviewed the arguments submitted to Judge Hays, the Transcript of the hearing held on August 16, and the exhibits admitted during the hearing. After considering the issues *de novo*, the Court adopts Judge Hays' Report as the Order of the Court and grants in part and denies in part Defendant's Motion to Suppress. The Court finds little reason to engage in an exhaustive discussion of the issues, so it will address Defendant's primary arguments and summarize the ultimate conclusions.

Defendant has challenged several of the Report's recommended findings. For the most part, the objections relate to relatively inconsequential matters. Regardless, all such objections are overruled.

1. The Court does not interpret Fact # 10 as implying that the Defendant arrived on the scene after the police; Fact #10 merely describes the timing of a particular encounter between Officer Owens and Defendant that took place after McDaniel and Grandberry were apprehended.

2. The Court overrules Defendant's objections (be they deemed factual or legal) to the conclusion in Fact # 11 that the police conducted a protective sweep after apprehending McDaniel and Grandberry. The police were reacting to a report of shots fired; the police did not know (1) if anyone else was in the house threatening safety of the officers or the public or (2) if anyone was in the house who might be injured by the gunshot. Defendant contends the actions of the police outside the house (that is, those not involved in the sweep) do not suggest a fear for safety. To the contrary, the risk was not that gunmen would begin shooting from windows, but that an armed individual was still in the house. Moreover, Defendant ignores the legitimate need to insure that no victims were in the house, injured. Defendant also argues the sweep was really a full-blown search because Officer Owens described the sweep as "methodical." In context, Officer Owens' use of the word "methodical" does not equate with "detailed" or "thorough;" in fact, when asked to explain what he meant he testified "it means [a] very slow and very safe search. It only takes one bullet to kill somebody." Tr. at 57.

3. The Court accepts Fact # 12: the officers could not gain entry to the house through the back door because that part of the house was too cluttered. Defendant argues this finding defies logic because Grandberry ran out that door. The Record supports the conclusion that entry through the rear door could not be accomplished safely, not that it was impossible under any circumstances. E.g., Tr. at 45-46.

4. Defendant's objections to Fact # 13 are rejected in part because he provides no evidence to contradict the finding that "there was a lot of stuff on the floors." The finding that Officer Raab stood by a door after a bedroom was cleared until told he was no longer needed is also supported by the Record. Defendant's argument seems to be that a room could not be cleared if a weapon was found therein, but once the house was cleared of people the presence of weapons was no longer a threat.

5. The Court accepts that the sweep took twenty to twenty-five minutes. Abundant evidence supports this finding (including Defendant's own testimony). E.g., Tr. at 14, 57, 100.

6. The Court accepts Fact # 17 because Defendant's objection does not really contradict this finding. The Court finds Detective Ward determined that re-entry into the house required first obtaining either a warrant or consent.

7. Defendant's objection to Fact # 18 is puzzling. First, he objects to the finding that he told Detective Ward that the house was his residence. Whether he initially described the house as his residence or merely a building that he had control over is irrelevant in the context of the issues discussed. Second, his objection to the testimony that he appeared "out of nowhere" is of little effect because this was Detective Ward's testimony, not Judge Hays' finding. In any event, the point is irrelevant: Detective Ward arrived at the scene at 12:10 or 12:15, Tr. at 64, and would not necessarily have known that Defendant was at the scene the whole time. In context, Detective Ward's testimony merely establishes that, from his perspective, he had no prior knowledge of Defendant or Defendant's presence when Defendant approached him. Tr. at 65. Again, this point is of little consequence.

8. The Court rejects Defendant's objection to Fact # 19 and finds Detective Ward's testimony to be credible. Defendant argues that all of Detective Ward's testimony should be rejected because Detective Ward falsely testified that Defendant was not under arrest when his consent was sought. Defendant insists he was actually arrested at 11:30 and has submitted an Investigation Arrest Approval indicating Defendant was arrested at 11:30. This document was not introduced or admitted at the Suppression Hearing. It appears to have been completed after the fact by an individual who was not at the scene. The document lacks sufficient probative value to outweigh the testimony of the officers at the scene, and the Court finds Defendant was not in custody, and was not handcuffed, when the consent to search was sought. The Court also finds, based on Defendant's testimony, that he read and understood the consent form. Tr. at 110-11. It is therefore irrelevant whether anyone read it to him. Finally, the

Court does not believe Defendant was threatened or coerced in any way when asked whether he consented to the search.

Based on the Court's findings, the Court concludes the protective sweep was justified and proper. The officers were entitled (if not obligated) to enter the house to see not only if there were threats to safety but also to confirm that nobody was in the house and injured by the gunshot reported by the witness. Thus, while Defendant was asked to open the front door, this is of no constitutional significance because (1) the police were going to enter the house with or without his assistance and (2) his consent was not required. The fact that he was asked to unlock the door does not invalidate the sweep or anything seen in plain view while the sweep was conducted. During the sweep, drugs and guns were seen in plain view; the Court rejects Defendant's suggestion that the scope of the sweep exceeded its purpose, and that officers did not search drawers, briefcases, or other places where a person could not have been found. Defendant voluntarily consented to a search of the premises. The Court believe Defendant was told that if he did not consent the police would obtain a warrant, but this does not amount to coercion.[1] The Court does not believe Defendant was told the police would be angry or destructive if they had to obtain a warrant. Armed with Defendant's consent, the police conducted a more thorough search and fund additional items of interest, including a scale, ammunition, and a ballistic vest.

For these reasons, Defendant's Motion to Suppress is granted in part and denied in part. Statements made by Defendant to Detective Pfeifer are suppressed. The motion is denied in all other respects.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: September 21, 2011            UNITED STATES DISTRICT COURT

---

[1] Even if the consent was coerced, the evidence still would not be suppressed. The Court finds, by a preponderance of the evidence, that the police would have obtained a warrant and inevitably re-entered the house after the protective sweep. E.g., United States v. Halls, 40 F.3d 275, 277 (8th Cir. 1994), cert. denied, 514 U.S. 1076 (1995).